IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CROOKED CREEK PROPERTIES, INC., a Nevada corporation, Plaintiff, v. RICHARD ENSLEY and ANITA LILES, Defendants. | CASE NO.: 2:16-CV-905-WKW [WO] |

# MEMORANDUM OPINION AND ORDER

*Déjà vu*!  It is Groundhog Day, and, like the Punxsutawney weatherman stuck in a circuitous time-loop,[1] this court finds itself reviewing (and re-living) the same case, yet again.  But unlike Bill Murray's movie dilemma, it's not funny.  For the fourth consecutive time, in what can only be described as a case of sheer delirium, Plaintiff, Crooked Creek Properties, Inc. ("Crooked Creek"), files this action seeking to reclaim a Section 8 housing apartment complex, known as Danya Park Apartments, in Autauga County, Alabama. (Doc. # 1.)  However, because Plaintiff's Complaint is no more availing than it was the three previous times before this court—indeed, it is unavailing—Defendants Richard Ensley and Anita Liles

---

[1] *See* GROUNDHOG DAY (Columbia Pictures 1993). It is no coincidence this opinion is dated and filed on February 2.

(collectively, the "Defendants") bring two motions: a motion to dismiss (Doc. # 6), predicated on *res judicata*; and a motion for sanctions (Doc. # 7), based upon Crooked Creek's history of litigious, meritless, and vexatious filings over the same (lost) cause. For the reasons stated below, Defendants' motions are due to be granted.

## I. JURISDICTION AND VENUE

Jurisdiction is exercised pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction or venue.

## II. STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A Rule 12(b)(6) motion tests the sufficiency of a complaint; it is not a vehicle to litigate questions of fact. *See Harper v. Lawrence*

2

*Cty., Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010). However, exhibits attached to the complaint are also properly considered in the 12(b)(6) inquiry. *Weeks v. Wyeth, Inc.*, 120 F. Supp. 3d 1278, 1283 (M.D. Ala. 2015) (citing *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006)).

### III. FACTS

For fear of rote memorization, this court will not repeat Crooked Creek's factual allegations or its resulting procedural history. This court has summarized this history in two previous lawsuits. *See, e.g.*, *Crooked Creek Props., Inc. v. Hutchinson*, No. 2:09-CV-1104-WKW, 2010 WL 3629818 (M.D. Ala. Sept. 10, 2010) ("*Crooked Creek II*"), *aff'd*, No. 10-14477, 438 F. App'x 948 (11th Cir. 2011); *Crooked Creek Props., Inc. v. Ensley*, No. 2:08-CV-1002-WKW, 2009 WL 3644835 (M.D. Ala. Oct. 28, 2009) ("*Crooked Creek I*"), *aff'd*, No. 09-15988, 380 F. App'x 914 (11th Cir. 2010). Other courts have done this legwork as well. *See, e.g.*, *Walden v. ES Capital, LLC*, 89 So. 3d 90 (Ala. 2011); *Walden v. Hutchinson*, 987 So. 2d 1109 (Ala. 2007); *Ex parte Walden*, 785 So. 2d 335 (Ala. 2000).

Moreover, and perhaps most importantly, besides substituting new names for its claims—which are in fact the same claims predicated upon the same factual and procedural narrative as the previous lawsuits—there is absolutely nothing new about this Complaint. Because the court has extensive knowledge of the procedural and

factual underpinnings of this litigation, any reference to the facts of this case will be drawn from those previous cases.

## IV.  DISCUSSION

In its Complaint, Crooked Creek asserts nine claims against Defendants, including: a claim for trespass to real estate (Claim I); a claim for conversion of negotiable instruments (Claim II); a claim for unjust enrichment (Claim III); a claim that Defendants wrongfully and unlawfully used and occupied Crooked Creek's real property (Claim IV); a claim to recover possession of real property (Claim V); a claim in equity to remove a cloud on the title of its property (Claim VI); a claim for ejectment (Claim VII); a claim for partition by sale or by division (Claim VIII); and a claim for an accounting (Claim IX).[2]  (Doc. # 1.)

---

[2] In the jurisdictional section of the Complaint, Plaintiff also attempts to rest subject matter jurisdiction on 28 U.S.C. § 1331 on grounds that Plaintiff, as the purported "fee simple absolute owner of" Danya Park Apartments, "is entitled to possess . . . its federally subsidized property and to receive as compensation the U.S. Government Treasury checks and low income families' rent payments, to the *exclusion of the defendants herein*." (*See* Doc. # 1, at 4–5 (emphasis in original).) Plaintiff then recites in a single sentence an unexplained and incomprehensible listing of alleged constitutional guarantees to which it claims protection from a "taking by the state or federal government." (*See* Doc. # 1, at 4–5.) Defendants aptly point out that there are no allegations that Defendants "are state actors." (Doc. # 6, at 3.) Once again, the court need say no more than it has said before:

> None of the Complaint's [nine] counts pleads a cause of action arising under the United States Constitution.  Rather, at best, the claims sound in state law.  Moreover, "[t]he federal constitution does not protect against injuries by purely private individuals—that is, individuals who cannot be considered as acting for state or local government." *Howard v. Wal-Mart*, 175 F. App'x 282, 283 (11th Cir. 2006).  The Complaint does not contain any allegations that suggest that any Defendant is a state actor.  Rather, the allegations indicate that Defendants are "purely private actors." *Id.*

*Crooked Creek Props., Inc. v. Ensley*, No. 2:14-CV-912-WKW, 2015 WL 12940177, at *2 (M.D. Ala. Apr. 7, 2015) (*Crooked Creek III*), *aff'd*, 660 F. App'x 719 (11th Cir. 2016).  "On this

4

Defendants assert that these claims are due to be dismissed for failure to state a claim because the doctrine of *res judicata* precludes Crooked Creek from re-litigating these matters. (Doc. # 2.) Specifically, Defendants argue that Plaintiff's "claims are barred by res judicata several times over based on the multiple cases finding against the Plaintiff and its alleged predecessors on claims deriving from an alleged ownership interest." (Doc. # 6 at 2.) Defendants are correct. For reasons of which, by now, Crooked Creek ought to be fully aware, *see generally Crooked Creek II*, 2010 WL 3629818; *Crooked Creek I*, 2009 WL 3644835, the court agrees . . . again.

A. *Res Judicata*

Small children usually learn fairly early on that if one parent says "no" to a request, it is best not to go behind his or her back and ask the other parent for the same thing. What the first says, goes. *Res judicata* is based on the same principle.[3] "The elements of *res judicata*, or claim preclusion, are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity

---

Complaint, any constitutional claim is 'wholly insubstantial and frivolous,'" *id.* (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10 (2006)), and, alternatively, fails to state a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6).

[3] As stated in *Crooked Creek II*, when we are considering whether to give *res judicata* effect to a state court judgment, we 'must apply the *res judicata* principles of the law of the state whose decision is set up as a bar to further litigation.'" *Green v. Jefferson Cnty. Comm'n*, 563 F.3d 1243, 1252 (11th Cir. 2009) (quoting *Kizzire v. Baptist Health Sys. Inc.*, 441 F.3d 1306, 1308–09 (11th Cir. 2006).

of the parties, and (4) with the same cause of action presented in both suits." *Dairyland Ins. Co. v. Jackson*, 566 So. 2d 723, 725 (Ala. 1990). "If these essential elements are met, any issue that *was or could have been* adjudicated in the prior action is barred from further litigation." *Hughes v. Allenstein*, 514 So. 2d 858, 860 (Ala. 1987) (emphasis original).

Unfortunately for Defendants, this court, and everyone else involved, Crooked Creek never learned that tried and true lesson of upbringing. Like a spoiled child, Crooked Creek has not only asked both parents (state and federal) for relief; it has asked repeatedly. However, at every turn, up and down the state and federal systems—including twice by this court—judges, like exasperated parents, have responded resoundingly, "No!" Additionally, those courts and this one have explained the effect of *res judicata* on this case. Undeterred, Crooked Creek responds that *res judicata* does not apply. Well, Crooked Creek, to quote the late philosopher Yogi Berra, "It's like *déjà vu* all over again."

First, the Autauga County Suit resulted in a valid, final judgment on the merits. The Alabama Supreme Court has consistently held, "A summary judgment operates as an adjudication on the merits of a claim." *Bean v. Craig*, 557 So. 2d 1249, 1253 (Ala. 1990). The Circuit Court of Autauga County granted summary judgment "as to all claims" brought by Ms. Walden in the Autauga Suit, and, on appeal, the Supreme Court of Alabama affirmed the judgment. *See Walden*, 987 So.

2d 1109. Because Crooked Creek is Ms. Walden's successor-in-interest, the circuit court's grant of summary judgment in the Autauga County suit applies to Crooked Creek, and it operates as a final judgment on the merits of Crooked Creek's claims.

Second, the Autauga County Circuit Court is a court of competent jurisdiction. "A court of competent jurisdiction is a court with jurisdiction *over the subject matter.* If a court lacks jurisdiction over a claim, then that claim would not qualify as one that 'might have been tried' by that court." *Ex parte Webber*, 157 So. 3d 887, 893 (Ala. 2014) (emphasis original). As explained in *Crooked Creek I*, "the crux of Ms. Walden's complaint in the Autauga County Suit was a claim to quiet title in Danya Apartments, pursuant to § 6-5-541, et seq., of the Alabama Code." 2009 WL 3644835, at *12. And, "[a]n action to quiet title gives the circuit court jurisdiction 'to determine and settle [title] as between the [plaintiff] and the defendants.'" *Id.* Accordingly, the Autauga County Circuit Court was a court of competent jurisdiction in the Autauga County suit.

Third, Crooked Creek, Richard Ensley, and Anita Liles have a substantial identity of interest with the parties to the Autauga County suit. First, Crooked Creek was in privity with Ms. Walden, who was a party to the Autauga County suit. This court discussed Alabama's law on privity in *Crooked Creek I*. *See id.* at *13–18. There, this court concluded that, "[b]ecause Crooked Creek—the plaintiff in this litigation—claims to be the successor-in-interest to the ownership interest in Danya

7

Apartments claimed by Ms. Walden, who was the plaintiff in the Autauga County Suit, the court finds that the two parties are in privity." *Id*. at *17. Furthermore, parties retain a substantial identity of interest with those with whom they are in privity. *See id*. at *16–17 (citing *Williams v. Moore*, 36 So. 3d 533, 539–40 (Ala. Civ. App. 2008)). Moreover, Richard Ensley was a named defendant in the Autauga County suit. *See* 2009 WL 3644835, at *17. Finally, as elaborated more fully in *Crooked Creek I*, Anita Liles and the Ensleys, including Richard Ensley, "are 'one in interest' against whom the same relief is sought 'over the same transaction.'" *Id*. That means that Ms. Liles retains the same identity of interest as Richard Ensley from the Autauga County suit. *See id*. at *18. Accordingly, as was the case in *Crooked Creek I*, the parties to this suit retain a substantial identity of interest with parties in the Autauga County suit.

Fourth, and finally, this action is based upon the same primary right asserted in the Autauga County suit. Therefore, it is the same cause of action for *res judicata* purposes. "The principal test for comparing causes of action for the application of *res judicata* is whether the primary right and duty or wrong are the same in each action." *Chapman Nursing Home, Inc. v. McDonald*, 985 So. 2d 914, 921 (Ala. 2007) (internal citations and quotations omitted). Crooked Creek contends that it "is the fee *simple absolute* owner" of Danya Park Apartments, (Doc. # 1 at 1), and seeks a "judgment for possession of [Danya Park Apartments]." (Doc. # 1 at 19.)

8

Similarly, the Autauga County complaint sought a judgment declaring that Ms. Walden, Crooked Creeks' predecessor in interest, "ha[d] the entire undivided fee simple interest in and to [Danya Park Apartments] with no restrictions thereon." (Autauga County Suit Compl. 20.)  As in Crooked Creek's previous federal-court litigation, "[a]ll of [Crooked Creek's] claims rest on the same underlying theory: that Crooked Creek is the legal owner of the Danya Apartments.  Because ownership of the Danya Apartments was fully litigated and decided adverse[ly] to Crooked Creek's predecessor in interest during the Autauga Court proceeding," *res judicata* applies.  *Crooked Creek Props., Inc.,* 380 F. App'x at 916.  The causes of action are, therefore, the same for *res judicata* purposes.

By now, Crooked Creek should recognize these findings as common themes: that the Autauga County suit resulted in a final judgment on the merits; that the Autauga County circuit court is a court of competent jurisdiction; that Crooked Creek, Richard Ensley, and Anita Liles are the same litigants from the Autauga County suit for *res judicata* purposes; and that this case presents the same cause of action as the Autauga County suit for *res judicata* purposes.  At the end of the day, if Crooked Creek feels like it is re-living a nightmare, join the club.  Crooked Creek has no case as it relates to this property, now or in the future. Its claim was resolved by the Autauga County circuit court, and affirmed on appeal. Defendants' motion to dismiss is due to be granted.

**B.**     *Sanctions*

In addition to seeking dismissal, Defendants also move for sanctions under Rule 11 of the Federal Rules of Civil Procedure. "Rule 11 sanctions are warranted when a party files an action that: (1) has no reasonable factual basis; (2) has no reasonable chance of success based on the legal theory used, or that cannot be advanced as a reasonable basis to change existing law; or (3) is filed in bad faith for an improper purpose." *Jackson v. Hall Cty. Gov't, Georgia*, 568 F. App'x 676, 679 (11th Cir. 2014) (citing *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003)).

In order to award sanctions, a district court must determine "whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry." *Worldwide Primates, Inc. v. McGreal,* 87 F.3d 1252, 1254 (11th Cir. 1996); *see also In re Mroz*, 65 F.3d 1567, 1573 (11th Cir. 1995) ("If an attorney has failed to conduct a reasonable inquiry into the matter, then the court is obligated to impose sanctions even if the attorney had a good faith belief that the claim was sound.").

Crooked Creek's claims are patently frivolous. A claim is objectively frivolous if it lacks a reasonable factual or legal basis. *See In re Mroz*, 65 F.3d 1567,

1573 (11th Cir. 1995). This court has gone above and beyond to explain to Crooked Creek that there is no legal basis for its claims, all to no avail. Three times, this court has explained alternative bases for denying redress to Crooked Creek from the Autauga County suit, including twice on the basis of *res judicata*. *See Crooked Creek III*, 2015 WL 12940177; *Crooked Creek II*, 2010 WL 3629818; *Crooked Creek I*, 2009 WL 3644835.

Additionally, John Norris, plaintiff's initial attorney in *Crooked Creek III*, should have been aware that Crooked Creek's claims are frivolous. Whether an attorney *should* have been aware of his or her client's frivolous claim(s) depends upon whether he or she *would* have been made aware of their frivolity upon a reasonable inquiry. *See Worldwide Primates*, 87 F.3d at 1254 ("In other words, we must inquire whether she would have been aware that it was frivolous if she had conducted a reasonable inquiry."). In this case, a reasonable inquiry into the factual and legal grounds for Crooked Creek's Complaint would have revealed the frivolous nature of Crooked Creek's claims. A cursory review of Crooked Creek's legal history—or even a simple Google search—would have alerted the most inauspicious lawyer about Crooked Creek's storied history of vexatious filing related to the ownership of Danya Park Apartments.

Moreover, this court took great pains to warn Crooked Creek—and future lawyers—about the potential for sanctions if Crooked Creek brought this suit again.

In Crooked Creek's last failed attempt, this court remarked, "Plaintiff is forewarned that serious consideration will be given as to whether Rule 11 or other sanctions are appropriate if a future lawsuit is filed in this court on the same factual predicate as the two prior lawsuits."  *Crooked Creek III*, 2015 WL 12940177, at *2 n.3. Accordingly, John Norris should have been aware that Crooked Creek's claims are frivolous, and therefore, sanctions are appropriate for purposes of this case.

Having determined that sanctions are appropriate, the court now turns to deciding which sanctions are appropriate.  The Supreme Court has remarked that the "central goal" of Rule 11 sanctions is deterrence.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); *see also* Fed. R. Civ. P. 11 ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.").  Furthermore, district courts retain great discretion in tailoring sanctions to particular cases.  *See Donaldson v. Clark*, 819 F.2d 1551, 1557 (11th Cir. 1987).

Defendants' only sanction request is an "injunction that, while still allowing access to the courts, limits Plaintiff from continuing to file one frivolous lawsuit after another relating to the ownership of the apartment complex."  (Doc. # 7 at 3.) Defendants argue that "[p]revious monetary sanctions in state court and in the 11th Circuit have done nothing to stop the Plaintiff's continued filings in this Court." (Doc. # 7 at 2.)  After a painstaking review of Crooked Creek's history before this

court and others—and if the past is any measure of what can be expected in the future—the court agrees that an injunction is appropriate. Defendants' motion for sanctions is, therefore, due to be granted.

## V. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

(1)  Defendants' Motion to Dismiss (Doc. # 6) is GRANTED;

(2)  Crooked Creek's Complaint is DISMISSED with prejudice;

(3)  Defendants' Motion for Sanctions (Doc. # 7) is GRANTED; and

(4)  Crooked Creek, its officers, directors, employees, agents, servants, successors, assigns and attorneys, are enjoined from making future filings related to Danya Park Apartments without first seeking leave of this court.

A final judgment will be entered separately.

DONE this 2nd day of February (Groundhog Day), 2017.

                                         /s/ W. Keith Watkins
                                    UNITED STATES DISTRICT JUDGE